**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-15-01391-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Leon Millard, Jr., | |
| Defendant. | |

Defendant Charles Millard is in the custody of the Federal Bureau of Prisons ("BOP"). He moves for compassionate release due to health concerns from the COVID-19 pandemic. Docs. 79, 89. For reasons stated below, the Court will deny the motion.

**I.    Background.**

In November 2015, a grand jury charged Defendant with six counts of aggravated sexual abuse of a minor and one count of abusive sexual contact of a minor in violation of 18 U.S.C. §§ 1153, 2241(c), and 2244(a). Docs. 1, 6. Defendant pled guilty to the abusive sexual contact charge. Docs. 32, 37, 74. He was sentenced to 144 months in prison. Doc. 73.

Defendant is confined at the La Tuna Federal Correctional Institution in Anthony, Texas ("FCI La Tuna"). *See* Federal BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited Jan. 24, 2022). His projected release date is June 11, 2027. *See id.*; Docs. 79-1 at 21, 89 at 2.

Defendant asked the warden at FCI La Tuna for compassionate release in August 2021. *See* Doc. 79-1 at 22. The request was denied on September 9. *Id.*

Proceeding pro se, Defendant filed a motion for compassionate release on November 12. Doc. 79. He filed an amended motion, through appointed counsel, on December 20. Doc. 89. The government filed a response opposing the motion on January 5, 2022, and Defendant filed a reply five days later. Docs. 93-94.

## II.   Compassionate Release Standard.

Compassionate release is governed by 18 U.S.C. § 3582(c). *See United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020) (citing *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019)). Section 3582(c) previously provided for compassionate release only upon motion of the BOP Director. *See id.*; *United States v. McCollough*, No. CR-15-00336-001-PHX-DLR, 2020 WL 2812841, at *1 (D. Ariz. May 29, 2020). On December 21, 2018, Congress enacted – and the President signed into law – the First Step Act of 2018 ("FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" *Willis*, 382 F. Supp. 3d at 1187 (quoting Pub. L. No. 115-391, 132 Stat. 5194, at 5239 (2018)).

The FSA amended § 3582(c) to permit motions for compassionate release by defendants. *See id.*; *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *8 (D. Nev. June 2, 2020) (noting that the FSA "materially altered § 3582(c)(1)(A) as previously only the [BOP] Director could bring a motion for compassionate release"). A defendant may bring a motion for compassionate release under § 3582(c) only after (1) requesting the BOP to make such a motion on his behalf, and (2) exhausting all administrative appeals after the BOP has denied the request, or 30 days have elapsed after the warden received the request, whichever is earlier. § 3582(c)(1)(A); *see United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) ("Joining the unanimous consensus of our sister circuits, we hold that § 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced[.]"). Specifically, the amended version of § 3582(c) provides:

> The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case –
>
> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).[1]

### III. Defendant's Motion.

The burden rests with Defendant "to provide proof that [he] has met the exhaustion criteria set forth in § 3582(c)(1)(A) and to establish that 'extraordinary and compelling reasons exist' to warrant [his] release." *United States v. Packard*, No. 19CR3886-H, 2021 WL 4751173, at *2 (S.D. Cal. Oct. 12, 2021). Defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement because he filed the present motion more than 30 days after he submitted his administrative request for compassionate release to the warden at FCI La Tuna. *See* Docs. 79-1 at 22, 89 at 9, 93 at 11.

Defendant seeks compassionate release under § 3582(c) due to the COVID-19 pandemic and his diabetes, obesity, hypertension, gender (male), age (57 years old), race (American Indian), and confinement at FCI La Tuna. Doc. 89 at 11-16.[2] The government argues that Defendant's motion should be denied because he has not shown extraordinary

---

[1] "Although relief under § 3582(c) is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

[2] Defendant references 18 U.S.C. § 4205(g) and the Fourth, Fifth, Sixth and Eighth Amendments at the beginning of his motion (*see id.* at 1), but develops no argument in this regard.

3

and compelling reasons, the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against early release, and he is a danger to the community. Doc. 93 at 1-2, 8-13.

### A. Extraordinary and Compelling Reasons.

Section 3582(c) does not define "extraordinary and compelling reasons" and there is no policy statement that applies to § 3582(c)(1)(A) motions filed by defendants. *See United States v. Weems*, No. 2:12-CR-02065-SAB, 2021 WL 5044825, at *2 (E.D. Wash. Oct. 29, 2021). The Sentencing Commission's policy statements in U.S.S.G § 1B1.13 – which apply to § 3582(c)(1)(A) motions filed by the BOP – "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *see United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *5 (D. Ariz. June 8, 2020) ("While the current policy statement may not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i), it does provide helpful guidance."). The Sentencing Commission has identified four circumstances that may qualify for compassionate release under § 3582(c)(1)(A): serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons." U.S.S.G. § 1B1.13, application note 1(A)-(D); *see United States v. Esparza*, No. 17-cr-1101-JAH, 2020 WL 2838732, at *2 (S.D. Cal. June 1, 2020).

The following medical conditions can constitute extraordinary and compelling reasons justifying compassionate release:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[.]
>
> (ii) The defendant is—
>
>   (I) suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

4

§ 1B1.13, application note 1(A).

BOP medical records show that Defendant suffers from hyperlipidemia (high cholesterol), hypertension (high blood pressure), type-2 diabetes, and severe obesity. Docs. 79-1 at 10-19, 89 at 21-23.[3] The CDC has found that diabetes and obesity can make a person more likely to get severely ill from COVID-19. *See* CDC, *People with Certain Medical Conditions*. The CDC also states that hypertension "possibly . . . can make [a] person] more likely to get severely ill from COVID-19." *Id.*[4]

The ongoing COVID-19 pandemic and Defendant's diabetes, obesity, and hypertension generally would support a finding of an extraordinary and compelling reason for compassionate release. *See United States v. Magana-Lopez*, No. CR-11-04200-001-TUC-RCC (JR), 2020 WL 6827766, at *2 (D. Ariz. Nov. 20, 2020) (diabetes); *United States v. Perez*, No. CR-18-00778-PHX-DGC, 2021 WL 24584, at *3 (D. Ariz. Jan. 4, 2021) (obesity and hypertension). But Defendant contracted COVID-19 in January 2021 and was asymptomatic. Doc. 79-1 at 15. While reinfections do occur, the CDC has found that "[a]fter recovering from COVID-19, most individuals will have some protection from repeat infections." CDC, *Reinfections and COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 25, 2022). Courts in this circuit therefore "have held that 'the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release.'" *United States v. Nash*, No. CR-03-00059-001-PHX-JAT, 2021 WL 1969729, at *2 (D. Ariz. May 6, 2021) (quoting *United States v. Risley*, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17,

---

[3] The Centers for Disease Control and Prevention ("CDC") defines "severe obesity" as a body mass index ("BMI") over 40. *See* CDC, COVID-19, *People with Certain Medical Conditions (Overweight and Obesity)*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 25, 2022). BMI is a person's weight in kilograms divided by the square of height in meters. *See* CDC, *Healthy Weight, Nutrition, and Physical Activity, Body Mass Index (BMI)*, https://www.cdc.gov/healthyweight/assessing/bmi/ (last visited Jan. 25, 2022). As of May 2021, Defendant had a BMI of 53. *See* Doc. 89 at 22.

[4] The CDC has not identified hyperlipidemia as a risk factor for COVID-19. *See United States v. Ruelas-Payan*, No. CR17-0229JLR, 2021 WL 5847587, at *4 (W.D. Wash. Dec. 9, 2021) (citing CDC, *People with Certain Medical Conditions*).

2020)); *see United States v. Purry*, No. 2:14-cr-00332-JAD-VCF-1, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) (denying compassionate release where the defendant failed to show that he would be "more susceptible to the virus a second time"). The Court finds that the chance of a COVID-19 reinfection "simply does not meet the bar for an extraordinary and compelling reason warranting release." *United States v. Ieremia*, No. 16-CR-00744-DKW-1, 2021 WL 67313, at *4 (D. Haw. Jan. 7, 2021); *see United States v. Logan*, 2020 WL 3960999, at *2 (W.D.N.C. July 13, 2020) ("Defendant cannot meet his burden of establishing that his risk of contracting COVID-19 is an extraordinary and compelling reason for a sentence reduction when he has already contracted – and beaten – the virus."); *United States v. Newman*, No. 3:17-CR-00448-BR, 2021 WL 2593763 (D. Or. June 24, 2021) ("[T]he Court finds persuasive the reasoning in the above cases regarding individuals who contracted and recovered from COVID-19. . . . [T]he Court concludes Defendant has not established an extraordinary or compelling reason for compassionate release[.]") (citations omitted).[5]

Additionally, Defendant has received both doses of the Moderna vaccine – the first on March 29, 2021 and the second on April 26. Doc. 89 at 24. COVID-19 vaccines available in the United States, including Moderna, "are effective at protecting people from getting seriously ill, getting hospitalized, and even dying." CDC, *COVID-19 Vaccines*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last visited Jan. 25, 2022); *see also* CDC, *COVID-19 Vaccines are Effective*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html ("COVID-19 vaccination helps protect adults and children ages 5 years and older from getting sick or severely ill with COVID-19.") (last visited Jan. 25, 2022). Defendant's vaccination further mitigates his

---

[5] Defendant claims that he has experienced "lingering symptoms" associated with "long haul COVID[.]" Doc. 89 at 2. The government notes, correctly, that Defendant has not been diagnosed with that condition and his medical records show no recent complaints or documented issues with breathing beyond Defendant's prior self-report, for which he received an inhaler to use "as needed." Doc. 93 at 10 n.6 (citing Doc. 93-1 at 2-20); *see also* Doc. 79-1 at 18 ("Inmate is here with c/o continued [shortness of breath]. 'I think [it's] the lingering of the COVID.' He reports using the Albuterol inhaler three times daily which helps control his symptoms.").

risk of being reinfected and becoming severely ill from COVID-19. *See Nash*, 2021 WL 1969729, at *2 ("Further decreasing the risk associated with reinfection, Defendant has received his first dose of the Moderna COVID-19 vaccine."); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 846 (D. Ariz. 2021) ("Although Baeza-Vargas's [medical conditions] make her more likely to suffer serious complications from COVID-19, the FDA has concluded that the Moderna COVID-19 vaccine is 95% effective at preventing infection and virtually entirely effective in preventing severe disease, including in participants with comorbidities."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.").

Because Defendant already has "been infected and vaccinated, his chronic medical conditions do not amount to an extraordinary and compelling reason to warrant compassionate release." *United States v. Ballenger*, No. CR16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021); *see United States v. Lipsey*, No. CR-07-0120800-1-PHX-GMS, 2022 WL 180725, at *2 (D. Ariz. Jan. 20, 2022) ("While Defendant's underlying medical conditions might increase his risk of contracting COVID-19 in a vacuum, they do not warrant a reduction of his sentence when viewed alongside his prior infection and vaccination status. . . . Recent studies have . . . indicated that individuals who have recovered from COVID-19 and then obtained a vaccine experience even greater protection against severe cases of COVID-19 were they to be reinfected.") (citations omitted); *Nash*, 2021 WL 1969729, at *1 (denying compassionate release to a vaccinated defendant even though he was overweight and suffered from hypertension and diabetes); *see also United States v. Bongiorni*, No. CR16-109RSL, 2021 WL 2413348, at *4 (W.D. Wash. June 14, 2021) ("Courts in this circuit have found that a defendant's receipt of the COVID-19 vaccine weighs against granting compassionate release") (citations omitted); *United States v. Hayes*, No. 4:17-CR-00289-DCN, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated

prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions") (citations omitted).

Defendant notes that the CDC has confirmed the presence of the Omicron variant in Texas, where FCI La Tuna is located. Doc. 89 at 16. But as with "other variants, like Delta, vaccines have remained effective at preventing severe illness, hospitalizations, and death." CDC, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 25, 2022); *see United States v. Ngo*, No. 19cr1391 JM, 2022 WL 207704, at *3 n.1 (S.D. Cal. Jan. 24, 2022) ("The CDC's recent pronouncements regarding the vaccine's effectiveness in protecting against severe illness and death apply equally to the Omicron variant, even though the Omicron variant appears to be more transmissible than earlier COVID-19 strains.") (citing CDC, *Omicron Variant: What You Need to Know*); *Lipsey*, 2022 WL 180725, at *2 ("[W]hile the Omicron variant appears to cause a greater number of breakthrough cases in vaccinated individuals than prior strains of COVID-19 have, the 'existing, FDA-approved COVID-19 vaccines are still very effective at preventing serious illness.' Therefore, Defendant's risk of experiencing a severe case of COVID-19 is comparatively low, even during the current surge.") (citation omitted). The Omicron variant and Defendant's confinement at FCI La Tuna do not support a finding of extraordinary and compelling reasons warranting early release. *See id.*

At 57 years old (*see* Doc. 76 at 2), Defendant is at an increased risk of severe illness from COVID-19 relative to people in their 30s and 40s. *See* CDC, *COVID-19 Risks and Vaccine Information for Older Adults*, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Jan. 25, 2022). But the CDC has recognized that "[p]eople 85 and older are the most likely to get very sick." *Id.* Because Defendant "does not fall within – or even nearly approach – that age bracket, the Court cannot find that he merits compassionate release on this basis." *United States v. Johnson*, No. CR 02-310 (JDB), 2021 WL 3737681, at *6 (D.D.C. Aug. 24, 2021); *see United States v. Martinez*, No. 1:08-

8

CR-00087-DAD-1, 2021 WL 698208, at *5 n.6 (E.D. Cal. Feb. 23, 2021) ("Martinez is only 57 years old, and thus her age and age-related factors do not play a role in consideration of her pending motion.") (citing U.S.S.G. § 1B1.13, cmt. n.1(B)); *United States v. Habash*, No. 1:15-cr-00286-DAD-BAM, 2020 WL 6381586, at *5 n.5 (E.D. Cal. Oct. 30, 2020) (same); *United States v. Sewell*, No. 2:14-CR-00270-TLN, 2020 WL 6785329, at *2 (E.D. Cal. Nov. 18, 2020) (finding the defendant's concern about a possible COVID-19 reinfection to be speculative even though he was 57 years old and suffered from diabetes, obesity, and hypertension).

The CDC has found that some racial minority groups, including American Indians, are at increased risk of getting severely ill from COVID-19 due in part to "[l]ong-standing inequities in social determinants of health that affect these groups, such as poverty and healthcare access[.]"  CDC, *Introduction to COVID-19 Racial and Ethnic Health Disparities*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/index.html (last visited Jan. 25, 2022).  But Defendant has access to healthcare as a BOP inmate, and his COVID-19 infection was not severe.  Doc. 79-1 at 15; *see United States v. Rocha-Ayon*, No. 2:17-CR-48, 2021 WL 1663558, at *3 (S.D. Ohio Apr. 28, 2021) ("The CDC has noted that some racial minority groups have been disproportionately affected by COVID-19 due to factors such as poverty, discrimination, lack of access to health care, type of employment, and housing.  There is no indication that any of these factors would make defendant any more susceptible than non-minority inmates to COVID-19 in a federal institution.") (citation omitted); *United States v. Rivas-Lopez*, No. 3:07-CR-151-CRS, 2021 WL 1950042, at *4 (W.D. Ky. May 14, 2021) (noting that race and ethnicity risk factors are "inapplicable in the prison setting, as there is no disparity in access to healthcare among the incarcerated population"); *United States v. Maxwell*, No. CR 04-732-RSWL-1, 2021 WL 310970, at *4 (C.D. Cal. Jan. 28, 2021) ("Although it is true that the CDC has reported higher rates of hospitalization among some racial and ethnic minority groups, . . . the CDC has not indicated that those groups are inherently more susceptible to COVID-19.") (citation omitted).

9

Defendant asserts that men with COVID-19 have a higher hospitalization rate as compared to women. Doc. 89 at 11 & n.55 (citing medical article); Doc. 94 at 7 n.8 (same). Defendant, however, cites no case in which compassionate release has been granted based on an inmate's gender.

Because Defendant's case of COVID-19 was not severe and he is now vaccinated against the virus, his gender, race, age, medical conditions, and confinement at FCI La Tuna do not constitute an extraordinary and compelling reason for early release.

### B.     Section 3553(a) Factors.

The Court also must consider whether the applicable § 3553(a) factors permit Defendant's early release. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Soza-Soto*, No. 19-CR-684-GPC, 2020 WL 7260663, at *3 (S.D. Cal. Dec. 10, 2020) ("Before determining if release is warranted, the Court must also take into account . . . the Section 3353(a) sentencing factors."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (the court must "particularly [consider] whether compassionate release would undermine the goals of the original sentence"). The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution[.]" *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

Defendant has served about 57 months in prison – less than half of his 144-month sentence. *See* Doc. 79-1 at 21.[6] Defendant claims that the "nature and circumstances of the offense have been accounted for in the years he has already spent in prison." Doc. 89 at 17. The Court does not agree.

---

[6] Defendant was sentenced near the middle of the guidelines range, which was 135 to 168 months. *See* Doc. 76 at 13.

10

Defendant committed a heinous crime – sexual abusive contact of a minor. Doc. 74 at 7-8. The victim was Defendant's stepdaughter, who was less than 10 years old when the offense occurred. *Id.* She reported that Defendant sexually abused her multiple times and the abuse involved vaginal and anal rape. Doc. 76 at 4-5.

Releasing Defendant from prison when he has served less than half of his twelve-year sentence would not sufficiently account for the very serious nature of his offense. Nor would it promote respect for the law or afford adequate deterrence to criminal conduct. *See* Doc. 89 at 17. The § 3553(a) factors do not weigh in favor of compassionate release or a sentence reduction. *See United States v. Miller*, No. 3:15-CR-00462-AA, 2021 WL 2036659, at *2 (D. Or. May 20, 2021) ("[T]he § 3553(a) factors clearly weigh in favor of denying defendant's motion . . . [because] the underlying criminal activity in this case is very serious. Defendant sexually abused a young child after gaining his trust[.]"); *United States v. Tsosie*, No. CR-15-08165-001-PCT-DJH, 2021 WL 763976, at *3 (D. Ariz. Feb. 26, 2021) (finding that the § 3553(a) factors did not favor early release where the sexual abuse involved vulnerable children and reportedly occurred on more than one occasion); *United States v. Morgan*, No. 15-CR-00474-DKW-1, 2020 WL 7647476, at *4 (D. Haw. Dec. 23, 2020) (same where the defendant had sexually abused his fiancé's seven-year old daughter and had served less than half of his 168-month sentence).

**C.    Danger to the Community.**

Defendant also has failed to show that he no longer is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see United States v. Quan*, No. CR19-0148-JCC, 2021 WL 615402, at *2 (W.D. Wash. Feb. 17, 2021) ("Even if the policy statement is not binding, the Court may consider it in the exercise of its discretion. The policy statement recommends that courts not reduce sentences of individuals who would present a danger to the community upon release, USSG § 1B1.13(2), and the Court finds that to be an appropriate consideration.") (internal citation omitted). Defendant sexually abused his young stepdaughter while he was her sole caregiver. He presents no BOP records showing that he has received sex offender treatment while incarcerated. *See*

Doc. 93 at 12 (noting that Defendant "is an untreated child sex offender"). Contrary to Defendant's assertion, the danger he poses to the community if released early is not "minimal." Doc. 89 at 18; *see United States v. Defoe*, No. CR-15-08000-001-PCT-GMS, 2021 WL 289662, at *2 (D. Ariz. Jan. 28, 2021) ("Defendant is incarcerated for sexual abuse of a minor. . . . The severity of Defendant's crimes at least suggest he would continue to present a danger to the community if released."); *United States v. Morgan*, No. 15-CR-00474-DKW-1, 2020 WL 7647476, at *4 (D. Haw. Dec. 23, 2020) ("[T]he Court finds that Morgan remains a danger to the community and no conditions of release can, at this time, be fashioned to protect the public from his further crimes. This is especially so because Morgan admits that . . . he has not yet participated in any sex offender-specific programming."); *United States v. Crawford*, No. CR16-5303RBL, 2020 WL 4791265, at *6 (W.D. Wash. Aug. 18, 2020) ("Defendant is a significant threat to the community. The danger he poses is clear. [He] is an untreated sex offender with a dangerous sexual attraction to young children."); *United States v. Keeley*, No. 1:17-CR-138-BLW, 2020 WL 2841777, at *2 (D. Idaho June 1, 2020) ("Given his . . . demonstrated sexual attraction to minors [and] lack of treatment, . . . the defendant will pose a significant danger to children in the community of his release, and wherever he then travels."); *United States v. Fischer*, No. CR ELH-14-0595, 2020 WL 2769986, at *6 (D. Md. May 27, 2020) (defendant was a danger to the community given his "heinous crime" of sexual activity with a minor, the "frightening and high risk of recidivism posed by sex offenders," and the fact that he "[had] not completed either the BOP's Sex Offender Management Program or Sex Offender Treatment Program during his incarceration") (citations and quotation marks omitted).[7]

///

///

---

[7] If he were to be released early, Defendant intends to reside in his home with the support of his daughter, Christina Millard. Doc. 89 at 18. The government notes, correctly, that Defendant's proposed release plan (*see id.* at 28) has not been approved by the Probation Office and it is not clear whether he would have access to children at that residence or whether he could be adequately supervised. Doc. 93 at 11.

**IV.  Conclusion.**

Defendant has not shown extraordinary and compelling reasons for compassionate release or a sentence reduction.  He also has failed to show that he no longer is a danger to the community.  His motion will be denied.

**IT IS ORDERED** that Defendant's motion for compassionate release (Docs. 79, 89) is **denied**.

Dated this 31st day of January, 2022.

*David G. Campbell*
David G. Campbell
Senior United States District Judge